The next case for argument is Nazinitsky v. Integris Baptist Medical, docket 20-6076. Counsel, we're ready to hear your argument. Thank you, your honor. May it please the court. My name is John Crail and I represent the appellant Dr. Allison Nazinitsky. With me in the room is co-counsel Mr. Rand Eddy. Dr. Nazinitsky is an infectious disease specialist. Appellee Integris Baptist Hospital hired her in July of 2015 to work in their transplant institute. Integris paid Dr. Nazinitsky a lower rate of pay than her male comparators. Dr. Nazinitsky sued Integris under the Equal Pay Act and sued Integris for pay discrimination in violation of Title VII. Integris's justifications for Dr. Nazinitsky's lower rate of pay are, one, market factors, and experience. But there's no evidence in the record that either of those reasons was, in fact, the reason for Dr. Nazinitsky's lower rate of pay. Because there's nothing in the record that supports Integris's reasons that it was, in fact, the reason, we believe that a reasonable jury could find that those reasons were not, in fact, the reason and did not justify the pay disparities. So the Equal Pay claim, the summary judgment on that should be reversed and the reasons are pretextual. So the Title VII claim should be reversed. Well, didn't the hospital hire an independent third party to do an analysis of whether their compensation package was appropriate for someone of Dr. Nazinitsky's experience and specialty? So, Judge, they did hire an independent consultant to review Dr. Nazinitsky's pay package. A couple things on that. First, the salary package that was reviewed was the one that was in effect in April of 2015, not in July of 2015. So the opinion that they gave was on a lower salary than what the contract actually reflects. The reviewed salary in April was a base salary, which we agree with, and that ended up being the base salary. And then it was based on a relocation package, which was never part of the actual contract. What was part of the actual contract was a bonus that was only available in the second year. And Dr. Nazinitsky, excuse me, claims that that was never paid in her EEOC complaint and in her deposition. Was it a potential bonus? It wasn't a guarantee in any fashion, was it? It was not a guarantee. It was based on certain factors that are not really specified in the contract. And the only clear thing in the contract says that it is only available beginning in the second year of the two-year term. Another thing I think that's kind of important and maybe a little confusing about this case compared to other equal pay and Title VII pay discrimination claims is that Dr. Nazinitsky is not claiming that she should be paid an exact dollar-for-dollar amount to her comparators. There was no other infectious disease physician in the transplant institute, so the best comparators were a cardiologist, a nephrologist, and a hospitalist. And those three comparators were paid in the 70th, 80th, and 90th percentiles of the ranges for their specialties. She admits all would be paid more than her specialty, right? I'm sorry, say that again. In comparing the compensation among the specialties that are at issue here, your client's compensation, even if they all had the same experience, would be lower. Yeah, so Dr. Nazinitsky's claim is, for example, is that an infectious disease specialist such as Dr. Nazinitsky should be paid less on average than, say, a cardiologist, dollar-for-dollar. Okay. My claim is that either, so go ahead. And so what she's saying is even taking account for that specialty difference, I should be paid the same percentage of ranges within a specialty. Correct? That's correct. One of two things should be true. Either each doctor should be... She doesn't account for, that I can tell, the difference in experience. She just got out of medical school before she took this job, right? That's correct, Judge, and it's... And so one of these guys has 14 years experience, so her argument is if he gets paid at the 50th specialty, I should be paid at the 50th percentile of my specialty. Is that the argument? Sort of. I think the argument more specifically is that the reason for the pay disparity has to be in this situation, Dr. Nazinitsky was paid less because of her experience, and there's nowhere in the record that says that Integris made the decision at the time of hiring, Dr. Nazinitsky, we're going to pay you less than these other three doctors because you were right out of school. There's nothing that says first year infectious disease physicians make in the 40th percentile versus 10 years from now, you'll make in the 80th percentile. Well, doesn't it stand to reason, though? These other three doctors have 30 plus years of total experience. How are they going to get some sort of a compensation for that experience? It's going to be the longer you're here, the more you move up the percentile, it would seem, just logically. Sure, I think that could be the reason, but it is not, in fact, the reason in this case, in the record, and that's what the Nicholson case says. That's the law of this circuit, is that the reason for the pay disparity, it's not that it could be a reason, but that it is, in fact, the reason in this case, and there's no evidence that they did, in fact, consider experience at the time. Well, I thought Judge Phillips' question was a question of common sense. Do we just throw our common sense out the window? Well, I mean, I think that certainly experience could play a factor, but there's nothing that says that an infectious disease physician is no more valuable to the hospital than if she was experienced. In fact, her production, the two years she was there, was on the higher range of her specialty. Let me ask you about that. What does that matter? We're talking about the salary that was set before she had any experience rating, so why does that matter at all? Sure, I mean, I think it just goes to show that the pay disparity, it proves out that the pay disparity is not new. You would concede that's wholly irrelevant to this? Well, I would concede that what's important is what they considered at the time, and one thing they did not consider was experience. Well, I don't know that you can say that, because in the report, it does indicate experience. It says it in kind of a conclusory paragraph, I think, and again, it does not actually consider her actual compensation that she was, in fact, paid. It considers if she was paid somewhere in a number that equated to the 50th to 75th percentile, which would mean that she would have been paid in the same percentile as one of her comparators. In fact, she was paid... But it indicates that it takes into consideration experience as one of the factors. If that was the salary range that she was actually paid, she was, in fact, paid in the 40th percentile. She didn't have the experience that would put her in the higher range. They ended up paying her a different number. Yeah, well, I mean, are you at a law firm? Do they pay first-year associates differently than they pay 10-year partners? No, but I mean, typically... No, they don't. I'm going to tell all my law clerks to apply. I wish that's how they did it, but I guess I should say, when you apply at a lot of places, when I see the classifies in the bar journal, it says that pay will be commensurate with experience, and that wasn't the case here in the record anywhere. Her application doesn't say that she's going to be paid based on her experience. Well, I mean, I guess I'm in the medical school, and I apply for a job. I think it is rational and reasonable to assume that I would be paid differently than somebody who has 15 years of experience in that specialty. Sure, and again, going back to the Mickelson standard, that very well could be a reason. I think market factors could be a reason, and I think experience could be a reason, but there's nowhere in the record that, other than this statement in the Navigant letter, that says that her inexperience was, in fact, considered. And also, the most experienced comparator was paid in the 75th percentile, or the 70th percentile, and the lesser experience were paid in the higher percentile. Well, I think you play a little fast and for six years and wasn't in this specialty for that whole 14 years. So, I mean, you know, we need to be fair with the facts. Yeah, I mean, I guess he had 14 years combined, and there was a pay gap. I absolutely concede that. Are you saying that her total compensation was not $275,000 a year? Yes. So, she was on a two-year term. According to the contract and according to her deposition testimony and her EEOC complaint, she was paid just the base salary plus some fringe benefits like cell phone reimbursements, and then the second year was the only year that she was eligible for the bonus. Now, there is some other non-clinical compensation, like the medical directorship, that is not part of the compensation package. It's an additional role, and so it's not part of her job as a physician. So, do the evidence indicate that she did not fulfill the conditions for the additional compensation? No. Dr. Nazaninsky contends that she was eligible for the bonus, and it was improperly withheld. My question is, in the second year, she paid $275,000? No, and that's not what she was eligible for. The bonus was less than that total number. The base plus the bonus was less than that total number. And what was it? It's under SEAL. I'm not sure I'm supposed to say. Okay. All right. All right. Well, isn't it consistent with what she listed as her desired compensation when she applied for this job? The base plus the bonus would be equal to her desired compensation, and she was never paid that. So, the base is less, but the base plus the bonus, yes, would be equal to her desired compensation. And doesn't what she asked for in her desired compensation, which I'm avoiding saying because it's SEAL, indicate that she understood that because of her lack of experience, she couldn't have desired compensation that was consistent with people in other specialties that had been working for a decade in that specialty? I'm not sure that the record says that one way or another about her desired compensation. Well, the record does say what her desired compensation was. Yeah. Nowhere near what people who were in higher compensated specialties for over a decade were getting compensated. Sure. It's nowhere near the 90th percentile. So, her expectations were reasonable based on her experience. I think they were in the lower end of the range, and she was in her first year. So, yeah, I think they were reasonable. But again, there's nothing in the record that says that Integris decided to pay her less because of her experience. Except for the reference in the letter from the expert that they hired to analyze the compensation package. Which, again, was a the one that she entered into with Integris. And, of course, common sense. Is the district court's decision under SEAL? Yes. It's redacted. I'm sorry for making reference to the district court decision. I did not realize that that was under SEAL. That's okay. I've got it sticking out, reminding myself right next to the camera, actually. I don't. If there's not any other questions of support, I'd like to reserve the balance of my time. Very well. Thank you. Mr. Albert. Hey, police and court. I'm Victor Albert. I represented Integris in this matter. So, this is that case where common sense and logic simply answer the pay disparity either under the Equal Pay Act or under Title VII when Dr. Nazaninsky compares herself to the three male comparators that she selected to make that comparison. And, in this case, the evidence offered by Integris in the record about the respective medical specialties of these four doctors and about the levels of experience as a practicing physician of these doctors clearly met the burden of proof that Integris needed to meet to prove the affirmative defense under the Equal Pay Act. That burden of proof is not as has been suggested by Dr. Nazaninsky's counsel. That burden of proof is simply that the employer must offer evidence that shows that the proffered P-R-O-F-F-E-R-D-E-D reasons could explain the wage disparity and that they do, in fact, explain the wage disparity. So, if the evidence is strong enough that no rational jury could find to the contrary, then the district court is proper to grant summary judgment. Now, in this matter, Integris did offer evidence that did explain the disparity in pay between Dr. Nazaninsky and the three male doctors to whom she compares herself. Number one, there is the medical specialty. And as was asked of Dr. Nazaninsky's counsel, they conceded and even offered evidence that showed that her medical specialty of infectious disease was the fourth rated medical specialty when compared with the other comparators. That being a doctor who has cardiology with chronic heart failure specialty, a doctor with transplant nephrology specialty, and a doctor with hospitalist intensivist specialty. So, on that basis alone, her medical specialty came in number four. Then you look at the evidence that was offered by Integris about the level of experience. Here, Dr. Nazaninsky, it's uncontested. She was just out of her fellowship program, just out of medical school. She had never held a job as a physician for compensation at a medical practice or at a hospital. But she wants to compare herself with physicians who had between seven years as of July 2015, seven years to 14 years experience as an employee physician of Integris. There's just no comparison there. This is the kind of evidence that was envisioned by this court in the Mickelson case where the evidence is just so clear and so strong and the logic is so preeminent that there just can be no other explanation. That couples with the fact of where we are with the facts. As was pointed out, Dr. Nazaninsky provided a desired compensation. That level was met. Without the bonus? So, this is without the bonus because when you look at the Navigant letter, which is in the record, and this is particularly on the page in the record at the appellant's appendix, page 314, and it's the last bullet point. There, the Navigant professional points out that in addition to the base compensation, Dr. Nazaninsky will receive a sign-on bonus of a significant amount and a medical education bonus. Both of those are going to be paid to her when she begins and then they're going to be forgiven, if you will, in 24 installments because it was a two-year employment contract. So, that's why the Navigant representative puts that factor in with the base compensation to arrive at that figure that he advises Kathy Calbon that this figure for her year one compensation potential puts her in the 50% to 75% range for physicians in the blended criteria of her specialty. And when you drill into it further, you see that blended means not just year one infectious disease doctors, but doctors with experience. So, she's actually being benefited somewhat there. But she is being put in what Kathy Calbon understands as a 50% to 75% for year one. And then when you add the bonus potential, she moves to the 75% to 90% range for year two. This is for a physician who is just out of her fellowship program. So, when you really look and compare like factors with like factors here, you're left with just one conclusion. One, even with this pivoted argument that Dr. Nazaninsky's are arguing today about why was she down here at the 40% which she wasn't, even with that, there wasn't a percentage pay disparity that was defining between her and the alleged comparators. They were all in that year two of being in the 75% to 90% range. Number two, but doesn't that mean that she had to have been paid the bonus? She would pay everything that's in that last bullet point. But as I understand the argument is she wasn't paid that. So, my understanding is different than that. And I don't recall that there's any evidence in the record to that. My understanding is she was paid that bonus. Well, there are two bonuses. One was at the time of being hired and then another one that she could qualify for in the second year. That is correct. Okay. So, I think that paragraph is dealing with the one that was what I'll call her signing bonus that you said was forgiven month after month. If she completed the full two years, then she got to keep all of it. Am I understanding that correctly? That's correct. And she did complete the two years and she did keep all of it. Okay. But I think the bonus that Judge Murphy is talking about is the bonus that she qualified for as of her second year that is different and she did not get that bonus. Did she? She did. And in the record, this is in Kathy Calbone's affidavit. It is on the appellant's appendix, page 302. And this is paragraph 27 of her affidavit that reads, I quote, Dr. Nazanin qualified for and received $20,089.26 for fiscal year 2017 incentive compensation. That's the only information or evidence in the record regarding that incentive bonus. Well, isn't there, I thought in the record that the plaintiff is denying that she received that. Am I wrong? She denies that she received what she claimed she was entitled to. There was a dispute. She felt like she should have maxed out on her bonus. The persons who reviewed her for the bonus felt like she shouldn't have maxed out in part because of some of the performance issues that were dealt with and briefed on the other issues that have been abandoned on this appeal. But the dispute here was not whether or not she qualified for and received that amount of the bonus, just that she claimed she should have gotten 100% of what she could have qualified for. And Integris, in its business judgment, decided that based on her performance for 2017, which included many factors, some of which included those issues that dealt with her interactions with other people, with staff members and other people, that she would be entitled to and would be paid the bonus. She just wouldn't be paid the 100% bonus. That's where the dispute is. There's no evidence in record anywhere that she did not receive that amount of the undisputed bonus. In the qualification for this, I'm going to call it the second type of bonus, was one of the considerations for, I think, RUVs? Yes. So, under her employment agreement, the RVUs were not part of the consideration for her base compensation. They were part of the consideration for the incentive bonus. So, it was a factor, a category that was considered and determined in that compensation structure. So, you're saying, is it in that bonus, she did well on the RVUs, but she didn't do so well in getting along with people? Yes. That's the way the decision makers who assess the performance for that bonus determined it. Okay. When we look at this, do we make the judgment on the claims based solely on the navigant letter, what she was offered, or do we do it on the basis of what she received? We submit that the court should look at everything. Now, the district court, in the opinion, looked at base compensation. What I understand Dr. Nazaniski's argument now to be is, she's not even arguing so much about the amount of the base compensation or bonus compensation. Her argument now that she's pivoted to in her reply brief is, why was I put in at the 40% level? And our position is, she wasn't put in at a 40% level. Based on what navigant advised Integris, she was being put in at a 50 to 75% level. That was the good faith understanding that Integris had when it assessed how to compensate her. And let's keep in mind- So, in answer to my question, you're saying we go by the navigant letter. Go by the navigant letter, yes. And to that extent, wages for purposes of an EPA analysis includes all forms of bonuses. And I noted that the parties both, in our briefs, cited to an outdated CFR. And so, I want to give the court the current CFR citation for that. That is found at 29 CFR section 1620.10. And this is further pointed out by the decision of the Kleinwart Benson Government Services, 698 Fed Sup, 1401. It's a 1988 decision from the Eastern District of Illinois. But there, the court quotes from this CFR that says, under the Equal Pay Act, the term wages includes all payments made to or on behalf of an employee as remuneration for compensation irrespective of the type of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum bonus, et cetera. So, we would submit, Your Honor, in answer to your question, yes, you would include the bonus compensation that the navigant representative looked at and determined when he that the compensation proposed for Dr. Nazaniski was properly within the market criteria for a person of, for a physician of her experience, which the report concludes with that reference of her experience. And frankly, Dr. Nazaniski's lawyers conceded that in the reply brief, where they said that on page four, Dr. Nazaniski concedes that as Integris points out, Dr. Nazaniski overlooked the fact that that navigate considered experience. So, that's just not even an issue. And to wrap up, I would just simply say this, common sense and logic and the information that Integris offered to the district court clearly showed that the determining factors here were not Dr. Nazaniski's gender. The determining factors here were the medical specialties and the levels of experience. These other doctors she tried to compare herself to just simply had a different medical specialty that was higher rated in the market, and they had considerably more experience than she had when she started at your honor. Sorry. Please go ahead. Okay. I'm just watching the clock. It hasn't started, but I'll go ahead. The first thing I just wanted to point out is I'd like to direct the court just for ease of reference to the part of the contract that says what Dr. Nazaniski was actually paid, which is what the court should consider in an equal pay analysis and a pay discrimination analysis. 3.1 on appellant's page 328, 3.1 of the contract is the base compensation. 3.2 is the bonus compensation, which is available in year two only and is based on performance. There is nothing in the contract about this large bonus that's considered in the navigating letter. So, Navigant considers one thing, what Dr. Nazaniski, the contract that she actually entered into was something that was completely different. So, that's one thing. The second thing is, again, back to this Mickelson case. In the Mickelson case, the court reversed the summary judgment finding in favor of the defendant and remained at it because there was no contemporaneous documentation that showed that experience was actually considered. It could be a consideration, but it just simply was not. So, I think that case is really on point and I see that my time's up. Thank you. Thank you, counsel, for your helpful arguments. The case is submitted and counsel are excused. Judge Phillips, I was muted. Can I ask a question? Oh, please. Yes. Sorry. I should have asked. So, you're saying that the performance bonus, if you look at actuality and she didn't get the full bonus, is that what makes your equal pay claim? No. I think however you slice it, Dr. Nazanitski was paid lower than her male competitors. Even with that performance bonus, she's only bumped up into approximately the 50th percentile, I think, of her specialty. And those other doctors, when you factor in all of extra compensation on top of their base salary, they are bumped up even further. And that's outlined in our reply brief. All right. I understand. Thank you. Thank you. Case is submitted.